# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| VICTOR MANUEL GARCIA,<br><br>        Petitioner,<br><br>        v.<br><br>UNITED STATES OF AMERICA,<br><br>        Respondent. | )<br>)<br>)<br>)<br>)   1:07CV851<br>)   1:06CR68-1<br>)<br>)<br>) |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF MAGISTRATE JUDGE ELIASON

Petitioner Victor Manuel Garcia, a federal prisoner, has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Docket No. 27.)[1] Petitioner was indicted on three counts of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and one count of possession of firearms by an illegal alien in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2). (Docket No. 1.) He later pled guilty to one of the drug distribution charges and the firearms charge. (Docket Nos. 10, 13.) Petitioner was subsequently sentenced to 168 months of imprisonment on the drug charge and a concurrent 120 months of imprisonment on the gun charge. (Docket No. 18.) Following an unsuccessful direct appeal (Docket No. 26), Petitioner filed his current motion. Respondent has filed a response (Docket No. 32), Petitioner has filed a reply (Docket No. 34), and the motion is now before the Court for a decision.

---

[1]This and all further cites to the record are to the criminal case.

**DISCUSSION**

Petitioner raises four claims for relief in his motion, all of which allege ineffective assistance of counsel. In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668 (1984). Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain an evidentiary hearing a habeas petitioner must come forward with some evidence that the claim might have merit), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). A petitioner bears the burden of affirmatively showing deficient performance. See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). To show prejudice following a guilty plea, a petitioner must establish that there is a reasonable probability that but for counsel's allegedly deficient conduct, he would have not pled guilty but would have gone to trial. Hill v. Lockhart, 474 U.S. 52 (1985).

**Claims One and Three**

Petitioner's first claim for relief states that, but for the abandonment of an objection to the amount of drugs being used to calculate Petitioner's sentencing range under the United States Sentencing Guidelines (USSG), Respondent would not have been able to prove that Petitioner dealt over 1700 grams of methamphetamine. In his supporting brief, Petitioner expounds on this by alleging

-2-

that the factual basis and plea agreement in his case stated only that he dealt 50 or more grams of methamphetamine, that part of the drug amount used to sentence him was based on statements made by federal inmate Ritchie Ray Phillips, and that the drugs in question were not tested to see if they met the criteria for "ice" by being 80% pure. Petitioner also bases his third claim for relief on his attorney's failure to have the available drugs tested to determine their purity. None of these arguments prevail.

Petitioner is correct that both his plea agreement and the factual basis supporting it state that he dealt 50 or more grams of methamphetamine. However, what he ignores is the "or more" language in those documents. The documents only set 50 grams as a floor for the amount of drugs Petitioner dealt. They do not set a ceiling. Therefore, the fact that 50 grams was mentioned in those documents did not give Petitioner's attorney grounds to object to the amount of drugs calculated later in the Presentence Report (PSR). Further, as discussed next, a large amount of the drugs attributed to him in the PSR came from his own admission.

Petitioner contends there was no reliable basis for the amount of drugs set out in the PSR. A review of the PSR in Petitioner's case reveals that 793.8 grams of the drugs attributed to Petitioner were based on his own statements given to police after he waived his Miranda rights. (PSR ¶¶ 13, 17.) Another 907.2 grams appear to have been based on the statements of Ritchie Phillips. (Id. ¶¶ 16, 17.)

Certainly, Petitioner cannot complain about the amounts attributed to him from his own statements, and he does not appear to challenge them. He does, however, challenge Phillips' statements on the ground that Phillips is a prisoner and cannot be trusted. He points out that Phillips did not implicate him until after he (Petitioner) was arrested, which raises the possibility that agents could have told Phillips what to say. Petitioner's claim in this regard is nothing more than pure speculation. He has produced no evidence to show that agents induced Phillips to lie or that Phillips' statements were not credible. In fact, Petitioner's former attorney states that Petitioner agreed that he sold drugs to Phillips, but contested only the amount of these drugs. There was no error in relying on Phillips' statements.

When the attorney inquired about the amount to the Probation Officer who prepared the PSR, he was allegedly told that the drug amounts in the PSR were based on Petitioner's own statements to police and that his confession covered the drugs mentioned by Phillips. (Docket No. 32, Ex. 2 at 4.) The alleged comment by the Probation Officer that the drug amounts coming from Phillips' statements were covered by drugs to which Petitioner confessed, would not seem to be literally correct. Phillips told agents that he bought drugs from Petitioner in 2002 and 2003. (PSR ¶ 16.) So far as the PSR reflects, Petitioner confessed only to dealing drugs in 2004 and 2005. (Id. ¶ 13.) However, it is also true that Petitioner confessed to dealing more drugs than were attributed to

him by the PSR.  The amounts to which he confessed equaled the amount of drugs alleged in Phillips' statements.

Petitioner admitted to police "that as early as 2004, he was getting four ounces **(113.4 grams)** of methamphetamine every four weeks to sell."  (Id.)  This continued until September of 2005, when he began receiving 226.8 grams every three or four weeks.  (Id.)  The probation officer attributed only 113.4 grams of drugs to Petitioner for the amounts he confessed to selling prior to September of 2005.  However, it appears that he could have easily attributed at least nine times that much given the minimum time periods involved in Petitioner's confession (at least December of 2004 through August of 2005 with 113.4 grams of drugs supplied every four weeks).  This would have resulted in 1020.6 grams of methamphetamine instead of 113.4.  Taking out the 113.4 that was attributed, this would leave an additional 907.2 grams--an amount equal to that attributed to Phillips' statements.  Therefore, whether based on Petitioner's own statements or Phillips' statements, there was ample evidence that Petitioner dealt the amount of drugs on which his sentence was based.  Counsel did not err by failing to object to this amount and Petitioner was not prejudiced by any failure to object.

Finally, Petitioner believes that his attorney harmed his case by not having any methamphetamine tested to determine whether or not it was 80% pure so that it qualified as "ice" for sentencing purposes.  As explained in the affidavit from Petitioner's attorney, there would have been absolutely no point to such
-5-

testing. The purity of methamphetamine can be absolutely critical at sentencing in methamphetamine cases. This is because the USSG impose much higher sentences for "ice," which is defined as methamphetamine with over 80% purity. USSG § 2D1.1. However, in Petitioner's case, testing made no difference whatsoever. This is because the PSR did not count any of the 1701 grams of methamphetamine attributed to Petitioner as being "ice." When the prosecutor objected and claimed that some of the drugs should be counted that way, Petitioner's attorney worked with the prosecutor and was able to get the prosecutor to agree not to count any of the drugs as "ice." Far from "abandoning" Petitioner by not having the drugs tested as Petitioner claims, Petitioner's attorney actually benefitted him by making sure that the drugs were not tested and, therefore, could not be counted as "ice" under the USSG. No error occurred and Petitioner suffered no prejudice in counsel's handling of issues surrounding drug amounts or purity. Petitioner's first and third claims for relief should be denied.

### Claim Two

Petitioner's second ground for relief asserts that his attorney failed to properly contest a two-level increase in his sentencing range which was allegedly based on the possession of a firearm by an illegal alien. Petitioner raises three arguments in support of his contention that the increase should not have applied. He claims that the guns he possessed were for protection of his family and not connected to the drugs he was dealing, that

he was not an illegal alien, and that the search that located the guns was illegal.

Petitioner's first statement, that he possessed firearms to protect his family, is entirely conclusory. He attempts to support it by submitting police reports showing that the address where he lived at the time of his arrest was broken into twice in the months after his arrest. Of course, events occurring after Petitioner's arrest could have nothing to do with explaining his possession of firearms in the house on the day of his arrest. His statement that he possessed the guns for general protection, but not protection of his drug dealing is unsupported.[2]

Petitioner's next contention--that he was not an illegal alien--points out a basic flaw in his claim. His immigration status actually had nothing to do with the two-level increase in his offense level. The enhancement he received was for possession of firearms in connection with drug dealing, not for being an illegal alien in possession of firearms. (PSR ¶ 22); USSG § 2D1.1(b)(1). For this reason, whatever Petitioner's immigration status at the time of his arrest, it did not affect his sentence for the drug charge.[3]

---

[2]As his former attorney points out, to have prevailed on this basis, Petitioner would have needed to demonstrate to the sentencing judge that it was "clearly improbable" that the guns were connected to Petitioner's drug dealing. (Docket No. 32, Ex. 2 at 7.) Petitioner has made no showing as to how he could have met this standard.

[3]Petitioner appears to be confusing his conviction for being an illegal alien in possession of a firearm with his two-level increase for possessing a firearm during the time he dealt drugs. To the extent that he may be challenging his conviction for being an illegal alien in possession of a firearm, this also
(continued...)

-7-

Finally, Petitioner claims that the guns which supported the firearm increase were illegally seized. He asserts that his home was searched without a warrant and that he was coerced into consenting to the search. However, Petitioner does not even allege that he ever informed his attorney of this contention or that his attorney should or could have been aware of it from any other source. The factual basis in the case indicates that Petitioner voluntarily told officers of the guns and consented to the search. Petitioner does not indicate that his attorney knew or could have known anything different. His allegation is too conclusory to establish ineffective assistance of counsel.[4] All of Petitioner's arguments addressing his firearm possession and his related

---

[3](...continued)
fails. Petitioner pled guilty to that charge and admitted that he was an illegal alien. He now claims otherwise because, several years prior to his arrest, his mother filed a petition to have him made a permanent resident of this country. Nevertheless, Petitioner admitted that he was brought to this country illegally as a child (PSR ¶ 46) and there is no evidence that the petition filed by his mother was ever granted. He cites no authority showing that the mere filing of this petition by his mother made his presence in this country legal. In fact, his attorney researched the issue through an immigration attorney and concluded that it did not and that a different petition for an adjustment of status would have needed to be filed in order for Petitioner to have been temporarily legally present. (Docket No. 32, Ex. 2 at 5-6.) See also United States v. Orellana, 405 F.3d 360, 370 (5th Cir. 2005)(aliens not lawfully present while petition is pending, but no adjustment of status is filed). For this reason, the attorney did not raise the issue. Petitioner has produced nothing to show that his attorney's conclusion was incorrect. He has no grounds for an ineffective assistance claim on this issue.

[4]To the extent that Petitioner might be trying to raise a search and seizure claim based upon his allegations, he cannot. Not only did his guilty plea waive such a claim, but he failed to raise the claim on appeal despite being advised of his right to file a pro se supplemental brief (Docket No. 26 at 2). See Tollett v. Henderson, 411 U.S. 258 (1973); United States v. Maybeck, 23 F.3d 888 (4th Cir. 1994).

conviction and/or sentencing increase are without merit and should be denied.

### Claim Four

Petitioner's final claim alleges that counsel failed to properly review his plea agreement with him. This claim is entirely conclusory regarding prejudice. Petitioner does not explain how any failure to properly review the agreement negatively affected his case. The closest Petitioner comes to alleging some sort of prejudice is a statement that his attorney explained certain parts of the plea agreement to him, but did not explain the portion on page three where it advised him that he would be subject to a fifteen-year mandatory minimum sentence if it was determined at sentencing that he had three previous convictions for violent felonies or serious drug offenses. (Docket No. 10 at 3.) This argument fails because the passage he claims not to have understood played no part in his case. It was not determined that he had the necessary prior convictions for the fifteen-year mandatory minimum to apply and he was sentenced to less than fifteen years. He suffered no prejudice even if he did not understand this portion of his plea agreement.

Petitioner also states in his briefing of his claim that "[h]ad [he] been made aware of the true nature of the plea agreement, [he] would not have entered into the plea agreement, as it was written." (Docket No. 27, Supporting Memorandum at 16.) He does not explain this statement at all. Nor does he tell what about the "true nature" of the agreement was objectionable.

-9-

Instead, his use of the phrase "as it was written" may indicate a belief that he could have simply altered the plea agreement or negotiated a better agreement. However, nothing indicates that this was the case. To prevail at this point, Petitioner must show that he would have gone to trial instead of signing the agreement as written. He has given no reason why he would have done so.[5] He again cannot show prejudice and this claim should also be denied.

**IT IS THEREFORE RECOMMENDED** that Petitioner's motion to vacate, set aside or correct sentence (Docket No. 27) be **DENIED** and that Judgment be entered dismissing this action.

_____
**United States Magistrate Judge**

May 29, 2008

---

[5] In fact, Petitioner actually states at one point in his brief that he does not seek to have his conviction vacated, but only to challenge his sentence and lower his punishment. (Docket No. 27, Supporting Memorandum at 7.) This seems at odds with his entire attack on his plea agreement, as well as some of his other claims or subclaims. It appears that Petitioner may not understand that the result of a successful attack on his signing of his plea agreement would result in the invalidation of that agreement and his return to this Court with the prospect of facing trial on all of his original charges. He could also face the possibility of an even harsher sentence if convicted, depending on the facts produced at that time.